IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38110

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 589 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 14, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| NATHAN TODD BANBURY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction for grand theft, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Nathan Tood Banbury appeals from his judgment of conviction for grand theft. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

The state charged Banbury with grand theft, I.C. §§ 18-2403(1) and 18-2407(1)(b)(1), based upon the allegation that he stole a car. At trial, the owner of a car dealership testified that Banbury visited the dealership, inquired about a white Cadillac, and asked for the keys. The owner testified that he informed Banbury he could not take the car for a drive, but gave Banbury the keys so he could look inside. The owner also testified that, after he gave Banbury the keys, he returned to his office, looked out the window, and noticed that the car was gone. The owner called the police and provided a description of the car and of Banbury. The owner testified that, after a friend contacted him to let him know that the friend had located the car, the owner went to

1

the location the friend described. The location was Banbury's residence. The owner testified that he identified the car as the one taken from his dealership, although the advertising license plates and price markings had been removed, and called the police.

Two officers testified at trial. The first officer testified that, when he arrived at Banbury's residence, he noticed that the car had fresh puddles underneath it and looked like it had just been washed. The officer testified that the vehicle identification number on the car matched the vehicle identification number he received from the owner of the car dealership. The second officer made the initial contact with Banbury at his residence and both officers proceeded to conduct a security check. The first officer testified that, as Banbury sat on a couch in his living room, the officer observed pieces of a placard from the owner's dealership in a garbage can and a partial placard, an as-is warranty slip, and scissors sitting on the floor. The second officer testified that he spoke with Banbury following the provision of *Miranda*[1] warnings. The following exchange then took place between the prosecutor and the second officer:

[Prosecutor]  While you were there, did you recover the keys to the car?
[Officer]  I did. I asked [Banbury] for the keys, and he gave them to me.
[Prosecutor]  When, when he gave you the keys, were they on a key ring?
[Officer]  They were on a key ring with an additional key that didn't appear to be a GM key.
[Prosecutor]  Did you ask him about the additional key?
[Officer]  I did. It looked like a house key, and so I just--you know, obviously didn't belong to a Cadillac; and I asked him, "You know what the additional key was for?" I assumed it was the, the door to the house.

He indicated actually it was a door to his bedroom there within the house, was a--like a doorknob lock key, but only to lock his own bedroom.
[Prosecutor]  And after you recovered the key, what happened at that time?
[Officer]  Got the keys. I asked him some questions about whether or not he had taken the car. He said he wanted to remain silent.

And I asked him also if his fingerprints would be located inside the car. He said, "Probably."

I asked him if he'd washed the car. He said he wanted to remain silent on several of the questions.

---

[1]    *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Banbury did not object to this testimony at trial. Banbury was found guilty of grand theft and sentenced to a unified term of eight years, with a minimum period of confinement of one year. Banbury appeals.

## II.

## ANALYSIS

Banbury argues that he is entitled to a new trial because the officer made statements at trial regarding Banbury's invocation of his right to remain silent while being questioned by the officer. Banbury acknowledges that he did not object to such testimony at trial, but asserts that this instance of prosecutorial misconduct rose to the level of fundamental error that was not harmless in this case.

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Even assuming, without deciding, that Banbury's claim of prosecutorial misconduct does not fail under the first two prongs of *Perry*, the state presented overwhelming evidence of Banbury's guilt. Specifically, the owner of the car dealership identified Banbury as the person who was inquiring about the Cadillac and given the keys before the car was taken from the owner's dealership. Later, the car was found at Banbury's residence. While Banbury asserts that the sole issue that was meaningfully in dispute in this case was whether Banbury had the requisite intent to support the state's allegation of grand theft--intent to deprive or intent to appropriate property wrongfully taken from the owner--the state presented overwhelming evidence that Banbury had such intent. The owner testified that, when he arrived at Banbury's residence, the advertising license plates and price markings had been removed from the car. The officer who initiated the security check of Banbury's residence testified that Banbury gave him the keys to the car when asked and informed the officer that the additional key on the key ring was a key to Banbury's bedroom door. Another officer testified that, during the security check, he observed pieces of a placard from the dealership in a garbage can and a partial placard, an

as-is warranty slip, and scissors sitting on the floor. Because the evidence of Banbury's guilt was so abundant, we are convinced beyond a reasonable doubt that the officer's comments regarding Banbury's invocation of his right to remain silent while being questioned by the officer, even if erroneous, did not affect the outcome of the trial proceedings. Thus, Banbury's claim fails under the third prong of *Perry*.

## III.

## CONCLUSION

Banbury has not shown that the officer's comments regarding Banbury's invocation of his right to remain silent while being questioned by the officer affected the outcome of the trial proceedings. Accordingly, Banbury's judgment of conviction for grand theft is affirmed.

Chief Judge GRATTON and Judge LANSING, **CONCUR.**